## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| HEATHER KELLOM, individually, and as personal representative of the Estate of WILLIAM KELLOM, Deceased, | |
| Plaintiffs, | Case No. |
| v. | JURY TRIAL DEMANDED |
| Centurion of Florida LLC, | |
| Lorenzo Miranda, | |
| Dr. Lopez, | |
| Rotisha James, | |
| _Staff Signature_ , | |
| Defendants. | |

Now come Plaintiffs, Heather Kellom, individually and as Personal

Representative of the Estate of William Kellom, Deceased, through their

undersigned attorneys, and hereby complain of Defendants Centurion of

Florida, Lorenzo Miranda, Dr. Lopez, Rotisha James, and _Staff Signature_ ,

stating as follows:

1

**INTRODUCTION**

This case arises from the preventable death of William Kellom, a 47-year-old prisoner at the Central Florida Reception Center, who died on March 15, 2024, from complications of necrotizing fasciitis stemming from an untreated tooth infection. Despite reporting severe symptoms beginning January 12, 2024, including inability to eat, swallow, or open his mouth, Mr. Kellom was denied timely and adequate medical care by Defendants Centurion of Florida LLC and its medical staff. Over two weeks, multiple healthcare providers ignored obvious signs of spreading infection and sepsis, leading to his death. In bringing this action, Mr. Kellom's widow, Heather Kellom, charges the defendants with violations of Mr. Kellom's Eighth Amendment rights, medical negligence, and wrongful death.

**JURISDICTION AND VENUE**

1.      Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

2.      Venue is proper under 28 U.S.C. §1391(b). A substantial portion of the events giving rise to the claims asserted herein occurred within this district, and on information and belief, one or more Defendants reside in this judicial district.

# PARTIES

3.    Plaintiff Heather Kellom brings this action individually and as personal representative of the Estate of William Kellom.

4.    William Kellom was married to Heather Kellom.  They had two minor children, J.K. and K.K.

5.    Defendant Centurion of Florida, LLC ("Centurion") is a private corporation that contracts with the State of Florida or the Florida Department of Corrections ("FDC") to provide medical care to FDC prisoners.

6.    Defendant Dr. Lorenzo Miranda is a dentist employed or contracted by Centurion to provide medical care to FDC prisoners at the Central Florida Reception Center ("CFRC").

7.    Defendant Dr. Lopez is, on information and belief, a medical doctor employed or contracted by Centurion to provide medical care for prisoners at the CFRC.

8.    Defendant Rotisha James is, on information and belief, a licensed practical nurse ("LPN") employed or contracted by Centurion to provide medical care for prisoners at the CFRC.

9.    Defendant ___Staff Signature___ (referred to herein as "CL") is, on information and belief, a healthcare provider employed or contracted by Centurion to provide medical care for prisoners at the CFRC.

3

## ALLEGATIONS

### A. Mr. Kellom's medical care.

10.    In January 2024 William Kellom was 47 years old.

11.    Mr. Kellom had just entered the Central Florida Reception Center ("CFRC") near Orlando, Florida. The CFRC is a processing facility of the Florida Department of Corrections ("FDC").

12.    Mr. Kellom had entered the FDC to serve a short sentence.  He was in the process of being approved for work release. After paying his debt to society he was looking forward to resuming life with his family.

13.    The State of Florida contracts with a private corporation, Centurion of Florida LLC, to provide medical care to FDC prisoners.

14.    On January 9, 2024, as part of his intake process at the CFRC, Mr. Kellom had a routine dental appointment with defendant Dr. Lorenzo Miranda, a dentist employed by Centurion at the prison.  At the appointment, Dr. Miranda noted that Mr. Kellom's gums appeared inflamed.

15.    On January 12, Mr. Kellom submitted a dental emergency sick call request.  In the request Mr. Kellom reported that one of his teeth was in severe pain, so much so that he had not eaten in two days, had difficulty talking, could hardly open his mouth, and could hardly swallow.

16.    The symptoms Mr. Kellom reported on the sick call request were consistent with a spreading tooth infection.

4

17.    A tooth infection is a condition in which bacteria invade the dental pulp inside the tooth.

18.    A spreading tooth infection is life-threatening, because the bacteria infecting the pulp inside the tooth frequently spread into the body.

19.    Besides invading the person's mouth and jaw, the bacteria can spread to attack the brain and the heart. And if the bacterial infection enters a person's bloodstream, a systemic infection can result in which bacteria attack other parts of the body, resulting in sepsis.  The results include a condition called necrotizing fasciitis, in which "flesh-eating" bacteria destroy body tissue.

20.    The symptoms Mr. Kellom was reporting on his January 12 sick call form required urgent attention, within a matter of a day or two.

21.    Mr. Kellom had hand-labeled his January 12 sick call request a "dental emergency."

22.    The sick call forms used by Centurion did not include a designation for emergency requests.

23.    Mr. Kellom's sick call request was not received by Centurion's dental department until January 16.

24.    On January 16, Mr. Kellom was seen again by Dr. Miranda.

25.    At the January 16 appointment, Mr. Kellom reported to Dr. Miranda that he was experiencing swelling in his mouth and had been

5

unable to open his mouth or eat comfortably for several days, and that he had not eaten in multiple days.

26.    At the appointment, it was evident that Mr. Kellom's tooth # 32 was infected.  Additionally, on January 16 Dr. Miranda noted that the tooth was already abscessed.

27.    The symptoms that Mr. Kellom reported, and his infected tooth, indicated that he had an abscessed tooth infection that had spread beyond his tooth.

28.    Antibiotics are necessary to treat spreading tooth infections, but they are not a standalone treatment.

29.    This is so because antibiotics cannot adequately penetrate or eliminate the infection at its source in the infected tooth.

30.    There is also a high risk that, depending on the nature of the infection, antibiotics may not be effective in addressing it.  And if antibiotics are ineffective, a tooth infection can quickly spread to other parts of the body, becoming more dangerous and difficult to treat in a very short period of time.

31.    As such, the efficacy of the antibiotics must be monitored over the 24 to 48 hours after administration to ensure that they are working against the infection.

32.    If the antibiotics do not meaningfully reduce the pain and swelling over that period, it is a sign that the bacteria are resistant to the

6

chosen antibiotic, that the infection source has not been addressed, or that the infection is progressing to a more serious condition, like necrotizing fasciitis, that is far more dangerous and harder to treat.

33.    Additionally, a spreading tooth infection requires not only antibiotics but fast, definitive treatment, including emergent removal of the infected tooth.

34.    At the January 16 appointment Dr. Miranda, recognizing that Mr. Kellom had a tooth infection, prescribed antibiotics.

35.    However, Dr. Miranda did not extract Mr. Kellom's tooth at that time, nor did he provide any other care to address the tooth infection, such as a root canal.

36.    Dr. Miranda also did not order any monitoring of Mr. Kellom's condition over the following 24 to 48 hours to determine whether the antibiotics he had prescribed were effective in treating the spreading infection.

37.    Nor did Dr. Miranda note any treatment or diagnostic work, inside the prison or outside, that Mr. Kellom should receive in the coming days.

38.    Instead, Dr. Miranda had Mr. Kellom put on the dental sick-call follow-up wait list, with a follow-up to extract tooth #32 in 5-7 days.

7

39.     After the January 16 appointment, Mr. Kellom took the antibiotics as instructed, but they were ineffective against the infection and his condition continued to deteriorate.

40.     On January 18, fellow inmates got correctional officers to take Mr. Kellom down to the CFRC's medical unit.  Staff in the medical unit, however, sent Mr. Kellom back without treatment.

41.     By January 20, Mr. Kellom was showing signs of necrotizing fasciitis.  His infection emanated a strong, distinctive smell that was so powerful it induced others to gag.

42.     On January 20, medical staff came down to the dorm where Mr. Kellom was housed.  At this point Mr. Kellom was so weak he had to be transported in a wheelchair.

43.     The smell was so severe by this point that staff could be seen covering their noses.  Still, however, no treatment was provided to Mr. Kellom.

44.     On January 21, Mr. Kellom fell and was taken to the CRMC's emergency department for a laceration on his head.

45.     He was seen there by Defendant Dr. Lopez.

46.     Aside from the laceration, which was not considered serious, Dr. Lopez noted, "Old blood present in mouth. Pt states blood is from abcess [sic] on inside of jaw, near lower molar."

47.    The presence of antibiotics was a sign of a serious and spreading tooth infection, and was a sign that any antibiotics being provided were not working.

48.    Dr. Lopez, however, took no steps to intervene and obtain emergent care for Mr. Kellom, nor did she take additional steps to alert other medical personnel to Mr. Kellom's condition.

49.    On January 21, Mr. Kellom was also seen for the laceration by Defendant Rotisha James, a licensed practical nurse ("LPN").

50.    LPN James noted that Mr. Kellom "Has abcess  [sic] in mouth currently being treated for it with ATB [antibiotics]."

51.    LPN James, however, took no steps to intervene and obtain emergent care for Mr. Kellom, nor did she take additional steps to alert other medical personnel to Mr. Kellom's condition, including the demonstrable ineffectiveness of the antibiotics.

52.    On January 22, Mr. Kellom was seen again by Dr. Miranda, who finally extracted the #32 tooth.

53.    During the extraction, Dr. Miranda noted that Mr. Kellom had "dry blood all throughout his mouth and on his lips," a sign that Mr. Kellom had an open wound in his mouth and on his lips.

54.    The presence of an abscess indicated an emergent medical condition that required medical attention.

9

55.    Mr. Kellom's symptoms would also have indicated to Dr. Miranda that the antibiotics he had prescribed earlier had not been effective and that Mr. Kellom had therefore had an active tooth infection, with the serious dangers that posed, for more than a week.

56.    Despite these symptoms, Dr. Miranda did not attempt to obtain a diagnosis or emergent care for Mr. Kellom.

57.    On January 23 Mr. Kellom returned to Dr. Miranda.  In Dr. Miranda's notes, Mr. Kellom reported that he had finished taking the course of antibiotics Dr. Miranda had prescribed on January 16, and yet, Mr. Kellom reported to Dr. Miranda that he was still swollen and couldn't swallow, that his infection is leaking into his throat, he hadn't eaten in 10 days, and that he had passed out twice.

58.    Dr. Miranda observed that Mr. Kellom also continued to have blood all around his mouth and on his lips as he had the day before—a sign of an advanced and spreading tooth infection.  By this point, Mr. Kellom was ashy and pale, and he reeked from the infection.

59.    These were signs, combined with the history of Mr. Kellom's condition, were an indication that Mr. Kellom's tooth had both been abscessed for more than a week and that had resisted antibiotics during that time.  Given its resistance to antibiotics and the time it had had to spread,

Dr. Miranda was presented with a patient whose symptoms and history indicated a potentially systemic infection.

60.   Mr. Kellom's signs and history called for immediate and aggressive emergency treatment.

61.   Dr. Miranda, however, did not take steps to diagnose the cause of Mr. Kellom's symptoms or secure any emergency treatment.  Instead, he made a routine "referral" for Mr. Kellom to follow up with medical as needed.

62.   On January 24, Mr. Kellom went to the office of health services for the laceration on his head.  There he was seen by Defendant "CL."  At this point the septic nature of Mr. Kellom's spreading tooth infection would have been obvious to any medical provider who saw him.  Besides Mr. Kellom's obvious poor physical condition, he would have been emitting obvious odors of a person suffering from necrotizing fasciitis, with rotting flesh and active bacteria producing a putrid smell.

63.   Despite these obvious signs that Mr. Kellom was experiencing a medical emergency, however, Defendant "CL" took no steps to diagnose the cause of Mr. Kellom's symptoms or obtain appropriate medical care for Mr. Kellom.

64.   On January 24, Mr. Kellom also filled out another sick call request.  In it he explained, "I have very serious tooth infection even after

11

tooth extraction and antibiotics – have not ate in 2 weeks (unade) – pain – sickness – I need help (please)."

65.     Mr. Kellom's sick call request was received by the dental department on January 25.  The dental department instructed him to "please come for [sic] sick call for follow up after extraction (no copay)."

66.     Mr. Kellom came to the CFRC's dental office on the morning of January 25.  Staff there noted his history and noted that Mr. Kellom was experiencing generalized weakness, the sensation of passing out, pale, diaphoresis (profuse sweating), shortness of breath, and swelling.  The staff also noted blood in Mr. Kellom's oral cavity and extremely dry mucous membranes and low blood pressure.  Staff assessed Mr. Kellom with sepsis syndrome.

67.     Mr. Kellom was referred immediately to an outside hospital emergency room.

68.     Mr. Kellom had necrotizing fasciitis that was systemic in his body and had placed him in septic shock.

69.     Hospital staff made heroic efforts to save Mr. Kellom, but the bacteria in his body began eating it from the inside out.  In an effort to stave off the bacteria hospital staff remove his jaw, fingers, a foot, and parts of his neck.

70.    It was not enough.  With the bacteria attacking Mr. Kellom's internal organs, he died on March 15, 2024.

71.    The cause of his death was assessed as complications of tooth decay.

72.    The economic cost of Mr. Kellom's unsuccessful medical care runs into the many thousands of dollars.

**B. Centurion of Florida LLC's policies and practices.**

73.    William Kellom's injuries and death were proximately caused by the policies and practices of Defendant Centurion of Florida, LLC.

74.    Prior to and during the events giving rise to Plaintiffs' Complaint, Centurion of Florida, LLC maintained policies and practices pursuant to which prisoners like Mr. Kellom with serious medical needs were routinely denied medical care and access to medical care.

75.    Specifically, there exist policies and widespread practices at the FDC pursuant to which prisoners receive unconstitutionally inadequate healthcare, including policies and practices pursuant to which (1) healthcare staff commonly disregard reports by patients of objectively serious symptoms; (2) healthcare staff refuse to conduct or obtain diagnostic testing for patients; (3) healthcare staff fail to create a sensible treatment plan for patients whose health status require the creation of a treatment plan; (4) healthcare staff fail to ensure continuity of care among healthcare staff; (5) employees low cost at

13

the expense of constitutionally adequate care; (6) staff fail or refuse to arrange for prisoners to be treated in outside facilities, even when an outside referral is necessary or proper; (7) there is a lack of meaningful oversight over or accountability for medical staff, even when they provide egregiously faulty or fatally deficient care.

76.    It is a pervasive practice in FDC facilities serviced by Centurion that its employees turn a blind eye to obvious health problems suffered by prisoners, leading to often fatal delays in the diagnosis of conditions and the delivery of care.

77.    These policies and practices were allowed to flourish because Centurion of Florida, LLC, which direct the provision of healthcare services at the CFRC and within the FDC, directly encouraged the very type of misconduct at issue in this case, failed to provide adequate training and supervision of healthcare and correctional employees, and failed to adequately punish and discipline prior instances of similar misconduct.

78.    In this way, Centurion of Florida, LLC violated Mr. Kellom's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

79.    The above-described policies and practices were able to exist and thrive because Centurion of Florida, LLC was deliberately indifferent to the problem, thereby effectively ratifying it.

14

80. The following are examples of such customs in practice:

a. Curtis Dettmann died in an FDC prison 2018 after Centurion medical staff ignored obvious symptoms of *C. diff*, a common-post surgical infection that is deadly, features distinctive odors among its symptoms, and is easily treatable. Numerous medical staff at the facility ignored obvious signs that Mr. Dettmann was suffering from increasingly severe sepsis, and they ignored multiple communications from Mr. Dettmann's sister, who had come to visit him, that he was deathly ill. Like the medical staff in Mr. Kellom's case, multiple staff appear to have examined Mr. Dettmann as part of their routines, but because they had not been assigned to identify signs of sepsis, they ignored its obvious signs. Ultimately Mr. Dettmann was disgorged by Centurion doctors from the facility's medical wing with a general scheduled follow-up medical appointment—but he was so sick by this time that he died from sepsis alone in his cell a few hours later. Centurion was put on notice of this shocking care when Mr. Dettmann's family filed a federal civil rights action against the company, *McCrimmon v. Centurion of Florida LLC et al.,* No. 3:20-cv-00036-BJD-JRK (M.D. Fla.), alleging that Centurion of

Florida, LLC had settled customs of ignoring the serious medical needs of patients like Mr. Dettmann.

b. Elmer Williams was an FDC prisoner when a PSA screen, designed to detect signs of cancer, showed that his prostate cancer, which had been in remission, may have returned. He received an "urgent" referral to a urologist in September 2021 but the appointment never occurred. By November his cancer symptoms were manifesting physically, including difficulty walking, back pain, and leg numbness. A follow-up PSA test showed results four times worse than before, yet the Centurion doctor did nothing and refused to order a wheelchair. Eventually the cancer paralyzed Williams from the chest down. Williams finally saw a urologist the following March, but it was not until June that he saw an oncologist. By that time the cancer had metastasized to his hips, spinal cord, and lymph nodes. Only palliative care was possible. Centurion was put on notice of this care when he filed a lawsuit shortly after being given compassionate release, *Williams v. Dixon*, No. No. 3:22-cv-01221 (M.D. Fla.).

c. Raymond Gregg was diagnosed with a malignancy on his head in 2023. In August 2023, Centurion upgraded his case from

16

"routine to urgent by request of a doctor." By April 2024, a doctor from the Department of Head and Neck Surgery at UF Health stated that "numerous attempts had been made to admit Gregg into the hospital" to determine if his "complex skull base malignancy" could be operated on, but "these efforts have been refused" by medical personnel in FDC.

   d.  Centurion has widespread and systematic practices of denying basic eye care to patients, including needed eye surgeries. Florida inmates with cataracts and other vision issues were forced to wait years for surgery. More than 1,000 inmates were on a wait list to get eye surgery in 2024.  The systematic denial of eye surgeries has left many prisoners permanently blind.

81.   Centurion of Florida, LLC also acted to violate Mr. Kellom's constitutional rights through the actions and failures to act by individuals with final policymaking authority for Centurion of Florida, LLC, specifically Dr. Miranda, who on information and belief is director of dental services at CRMC.

82.   Mr. Kellom's injuries were caused by persons, including but not limited to the defendants named individually in this complaint, who acted pursuant to the foregoing policies and practices in engaging in the misconduct described in this complaint.

17

## CLAIMS

### COUNT 1
### 42 U.S.C. § 1983 - Eighth Amendment
### Centurion of Florida, LLC

83.    Plaintiff incorporates paragraphs 1 through ___ of this complaint as if fully restated here.

84.    Prior to and during the events giving rise to Plaintiffs' Complaint, Centurion of Florida, LLC maintained policies and practices pursuant to which prisoners like Mr. Kellom with serious medical needs were routinely denied medical care and access to medical care.

85.    Centurion of Florida, LLC also acted to violate Mr. Kellom's constitutional rights through the actions and failures to act by individuals with final policymaking authority for Centurion of Florida, LLC

86.    As a direct and proximate result of these acts and omissions, Mr. Kellom suffered pain and injuries descried in this complaint, including death.

WHEREFORE, Plaintiff demands judgement against defendant for

    a)    Actual and compensatory damages,
    b)    Punitive damages,
    c)    An award of attorneys' fees and costs, and
    d)    Any other relief this court deems just and proper.

**COUNT 2**
**42 U.S.C. § 1983 - Eighth Amendment**
**Lorenzo Miranda**

87.    Plaintiff incorporates paragraphs 1 through __ of this complaint as if fully restated here.

88.    Dr. Miranda encountered Mr. Kellom on multiple occasions in January 2024 during the time Mr. Kellom was exhibiting clear and obvious signs of a spreading tooth infection, dental abscess, and sepsis.  Despite these encounters, Dr. Miranda did not take steps to diagnose Mr. Kellom, ensure that he was adequately monitored, or ensure that he received the diagnosis and care his condition required.

89.    As a direct and proximate result of these acts and omissions, Mr. Kellom suffered pain and injuries descried in this complaint, including death.

WHEREFORE, Plaintiff demands judgement against defendant for

a)    Actual and compensatory damages,
b)    Punitive damages,
c)    An award of attorneys' fees and costs, and
d)    Any other relief this court deems just and proper.

## COUNT 3
## 42 U.S.C. § 1983 - Eighth Amendment
## Dr. Lopez

90.    Plaintiff incorporates paragraphs 1 through __ of this complaint as if fully restated here.

91.    Dr. Lopez encountered Mr. Kellom in January 2024 during the time Mr. Kellom was exhibiting clear and obvious signs of a serious medical condition, including potential spreading tooth infection, dental abscess, and sepsis.  Despite this encounter, Dr. Lopez did not take steps to diagnose Mr. Kellom, ensure that he was adequately monitored, or ensure that he received the diagnosis and care his condition required.

92.    As a direct and proximate result of these acts and omissions, Mr. Kellom suffered pain and injuries descried in this complaint, including death.

WHEREFORE, Plaintiff demands judgement against defendant for

a)    Actual and compensatory damages,
b)    Punitive damages,
c)    An award of attorneys' fees and costs, and
d)    Any other relief this court deems just and proper.

## COUNT 4
## 42 U.S.C. § 1983 - Eighth Amendment
## Rotisha James

93.    Plaintiff incorporates paragraphs 1 through __ of this complaint as if fully restated here.

94.    LPN James encountered Mr. Kellom in January 2024 during the time Mr. Kellom was exhibiting clear and obvious signs of a serious medical

20

condition, including potential spreading tooth infection, dental abscess, and sepsis. Despite this encounter, LPN James did not take steps to diagnose Mr. Kellom, ensure that he was adequately monitored, or ensure that he received the diagnosis and care his condition required.

95.    As a direct and proximate result of these acts and omissions, Mr. Kellom suffered pain and injuries descried in this complaint, including death.

WHEREFORE, Plaintiff demands judgement against defendant for

a)    Actual and compensatory damages,
b)    Punitive damages,
c)    An award of attorneys' fees and costs, and
d)    Any other relief this court deems just and proper.

**COUNT 5**
**42 U.S.C. § 1983 - Eighth Amendment**



Staff Signature    ("CL")

96.    Plaintiff incorporates paragraphs 1 through __ of this complaint as if fully restated here.

97.    [Staff Signature] ("CL") encountered Mr. Kellom in January 2024 during the time Mr. Kellom was exhibiting clear and obvious signs of a spreading tooth infection, dental abscess, and sepsis. Despite this encounter,

[Staff Signature] ("CL") did not take steps to diagnose Mr. Kellom, ensure

that he was adequately monitored, or ensure that he received the diagnosis and care his condition required.

98.     As a direct and proximate result of these acts and omissions, Mr. Kellom suffered pain and injuries descried in this complaint, including death.

WHEREFORE, Plaintiff demands judgement against defendant for

a)     Actual and compensatory damages,
b)     Punitive damages,
c)     An award of attorneys' fees and costs, and
d)     Any other relief this court deems just and proper.

## COUNT 6
## Medical Negligence
## Centurion of Florida LLC and Lorenzo Miranda

99.     Plaintiff incorporates paragraphs 1 through __ of this complaint as if fully restated here.

100.   Dr. Miranda and Centurion had a duty to provide Mr. Kellom with medical and dental care that meets accepted medical and dental standards.

101.   Dr. Miranda and Centurion departed from the standard of care that a reasonably prudent medical provider and dentist in the same field would have followed under similar circumstances.

102.   The foregoing breach of the standard of care proximately caused Mr. Kellom to suffer the harm described in this Complaint.

103.   As a result of the breach, Mr. Kellom suffered harm and damages described in this Complaint.

104.   Before filing this medical negligence claim, Plaintiff has conducted a reasonable medical investigation and obtained the opinion of a medical expert.

105.   An affidavit of merit is attached to this Complaint as an exhibit.

WHEREFORE, Plaintiffs demand judgement against defendants for

      a)     Actual and compensatory damages,
      b)     Punitive damages,
      d)     Any other relief this court deems just and proper.

### COUNT 7
### Intentional Infliction of Emotional Distress
### Lorenzo Miranda, Dr. Lopez,

**Rotisha James,**  <sub>Staff Signature</sub>  **("CL")**

106.   Plaintiff incorporates paragraphs 1 through __ of this complaint as if fully restated here.

107.   In the manner described more fully above, by denying Mr. Kellom medical evaluation or treatment, or access to medical evaluation or treatment, the Defendants identified in this count engaged in extreme and outrageous conduct.

108.   Defendants' actions as set forth above were rooted in an abuse of power or authority.

109.   Defendants' actions as set forth above were undertaken with intent or knowledge that there was a high probability that the conduct would inflict severe emotional distress and with reckless disregard of that probability.

110.   Defendants' actions, as set forth above, were undertaken intentionally, with malice, and/or with reckless indifference to Mr. Kellom's rights.

111.   As a direct and proximate result of Defendants' misconduct, Mr. Kellom experienced suffering injuries, including severe emotional distress, before his death.

WHEREFORE, Plaintiffs demand judgement against defendant for

a)    Actual and compensatory damages,
b)    Punitive damages, and
c)    Any other relief this court deems just and proper.

## COUNT 8
### *Respondeat Superior*
### 42 U.S.C. § 1983 - Eighth Amendment
### Centurion of Florida LLC

112.   Plaintiff incorporates paragraphs 1 through __ of this complaint as if fully restated here.

113.   In committing the acts alleged in the preceding paragraphs, the above described the individual Defendants were employees, members, and

agents of Centurion of Florida, LLC, acting at all relevant times within the scope of their employment.

114.   Consequently, Centurion of Florida, LLC is liable for the actions of its employees acting within the scope of their employment under state law.

115.   Centurion of Florida, LLC, as a private corporation acting under color of state law, should additionally be held liable under 42 U.S.C. § 1983 for the conduct of its employees and agents acting within the scope of their employment. *See Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 793-95 (7th Cir. 2014).

WHEREFORE, Plaintiff demands judgement against defendant for

a)   Actual and compensatory damages,
b)   Punitive damages,
c)   An award of attorneys' fees and costs, and
d)   Any other relief this court deems just and proper.

## COUNT 9
## F.S.A. § 768.19 - WRONGFUL DEATH
## CENTURION OF FLORIDA, LLC

116.   Plaintiff incorporates paragraphs 1 through __ of this complaint as if fully restated here.

117.   In the manner described above, each of the Defendants named herein, either individually or through their agents or employees, wrongfully caused the death of Mr. Kellom by failing to provide him with adequate medical care.

118.   Defendant Centurion breached a duty of reasonable care in failing to provide medical care to Mr. Kellom while he was incarcerated at CFRC.

119.   Each of the Defendants' acts, omissions, policies, practices, and/or customs described above were wrongful acts within the meaning of F.S.A. § 768.19 and was the direct and proximate cause of Mr. Kellom's untimely and wrongful death.

120.   Heather Kellom was the wife of William Kellom and J.K. and K.K. were his children.  They are entitled to recover for their mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, filial care, attention, advice, and counsel related to the loss their late husband and father.

WHEREFORE, Plaintiffs demand judgement against defendant for

a.   Actual and compensatory damages, and
b.   Any other relief this court deems just and proper.

WHEREFORE, Plaintiff Heather Kellom, on her own behalf and on behalf of the Estate of William Kellom, hereby respectfully request that this Court enter a judgment in her favor and against the Defendants in this matter.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all issues so triable.

Date: January 23, 2026                    Respectfully submitted,

                                          _/s/ Michael D. Cerasa_
                                          Michael D. Cerasa
                                          Florida Bar No 0015085
                                          Stephen H. Weil*
                                          Romanucci & Blandin LLC
                                          321 N. Clark Street
                                          Suite 900
                                          Chicago, IL 60654
                                          312-253-8592
                                          sweil@rblaw.net

                                          Natalie Robinson
                                          Ben Crump Law, PLLC
                                          121 S. Orange Ave.
                                          Orlando, FL 32801
                                          407-749-9702
                                          natalie@bencrump.com

                                          *Attorneys for Plaintiff*

                                          * Application for admission *pro hac vice* forthcoming